UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAMUEL KNOWLES, ) | FILED |
| ) | MAR 2 9 2018 |
| Plaintiff, ) | Clerk, U.S. District & Bankruptcy |
| ) | Courts for the District of Columbia |
| v. ) | Civil Case No. 16-1450 (RJL) |
| ) | |
| U.S. DEPARTMENT OF STATE, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**
(March 29, 2018 [Dkt. ## 19, 24])

Samuel Knowles ("Knowles" or "plaintiff"), appearing *pro se*, sues the United States Department of State ("State Department" or "defendant") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. The State Department has released responsive records and has moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *See* Def.'s Mot. Summ. J. [Dkt. # 19]. Plaintiff has filed a motion for the Court to take judicial notice of "a stipulated fact" that is not clearly defined. *See* Pet'r Requesting Court to Take Judicial Notice [Dkt. # 24]. Upon consideration of the parties' submissions, the record, and the relevant case law, the Court finds no genuine dispute surrounding defendant's compliance with the FOIA. Therefore, defendant's Motion for Summary Judgment is GRANTED and plaintiff's Motion to Take Judicial Notice is DENIED.

## BACKGROUND

The documented facts are as follows. In a FOIA request dated January 22, 2014, plaintiff sought:

> 1) any and all information regarding communications between the Bahamian authorities and the United States Drug Enforcement Agency about [plaintiff's] transport to the United States. 2) Any and all information regarding the diplomatic process involved in [plaintiff's] extradition from the Bahamas to the United States. 3) The names of all U.S. and Bahamian agents and personnel involved in the scheduling and execution of the flight.

Decl. of Eric F. Stein ("Stein Decl."), Ex. 1, at 1 [Dkt. # 19-4].

The State Department released responsive records between May 2015 and March 2017. On May 9, 2015, it released seven documents, four with redactions. Stein Decl. ¶ 6. On December 21, 2016, it released twenty-one documents, fourteen with redactions, and withheld six documents completely. *Id.* ¶ 9. On January 31, 2017, it released five documents, one with redactions, and withheld one document completely. *Id.* ¶ 11. The State Department withheld information under FOIA exemptions 1, 5, 6, and 7(C), codified in 5 U.S.C. § 552(b). *See id.* ¶¶ 33-59.

In addition, the State Department referred a "one page extradition memorandum" to the Drug Enforcement Administration ("DEA"), which, on March 13, 2017, released the document with third-party names redacted under FOIA exemptions 7(C) and 7(F). Decl. of Katherine L. Myrick ¶¶ 8-9 ("Myrick Decl.") [Dkt. # 19-6]. Defendant also referred eighteen documents, totaling forty-one pages, to the Department of Justice's Criminal Division, which withheld them in full under FOIA exemptions 5, 6 and 7(C).. Decl. of Gail A. Brodfuehrer ¶ 8 ("Brodfuehrer Decl.") [Dkt. # 19-5].

2

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). FOIA cases are routinely decided on motions for summary judgment. *See Brayton v. Office of U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

"FOIA requires executive branch agencies to make their records available 'to any person' upon request, 5 U.S.C. § 552(a)(3)(A), subject to nine exemptions, *id.* § 552(b)(1)-(9)." *Newport Aeronautical Sales v. Dep't of Air Force*, 684 F.3d 160, 162 (D.C. Cir. 2012). To prevail on summary judgment in a FOIA case, an agency must show that it adequately searched for records responsive to the relevant request and that any records withheld by the agency fall within one of FOIA's statutory exemptions. *See id.*; *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).

An agency seeking to satisfy that burden "[t]ypically . . . does so by affidavit." *Am. Civil Liberties Union v. U.S. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *Id.* Provided that they are accordingly detailed, agency affidavits "cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *Mobley v. CIA*, 806 F.3d 568, 581 (D.C. Cir. 2015) (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)). Indeed, "[t]o successfully

challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Span v. U.S. Dep't of Justice*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010).

## ANALYSIS

Plaintiff has listed "issues of disputed material facts," which essentially challenge both the search for responsive records and the withholding of information. Pl.'s Br. Opp'n to Def.'s Summ. J. Motion ("Pl.'s Opp'n"), Attach. A, Stmt. of Disputed Factual Issues 1 [Dkt. # 21]. For the reasons discussed below, plaintiff's challenges all fail.

### A. The Adequacy of the Search

To satisfy its obligations under the FOIA, an agency must perform an adequate search for records responsive to the relevant request. *Burwell v. Exec. Office for U.S. Atty's*, 210 F. Supp. 3d 33, 36-37 (D.D.C. 2016) (citation omitted). "The adequacy of an agency's search is measured by a standard of reasonableness and is dependent upon the circumstances of the case." *Weisberg*, 705 F.2d at 1351 (internal quotation marks and citations omitted). An agency "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (internal quotation marks omitted). The adequacy of an agency's search "is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of the Currency*, 315 F.3d

4

311, 315 (D.C. Cir. 2003). Therefore, "the failure of an agency to turn up one specific document in its search does not alone render a search inadequate." *Id.*

Typically, an agency is entitled to summary judgment on the search question when it has provided a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Mobley*, 806 F.3d at 581 (internal quotation marks omitted). Such an affidavit or declaration is "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Id.* (internal quotation marks omitted).

Although an agency may not ignore obvious "indications in documents found in its initial search that there were additional responsive documents elsewhere," *Iturralde*, 315 F.3d at 315, the "'lead' must be 'both clear and certain' and 'so apparent that the [agency] cannot in good faith fail to pursue it,'" *Mobley*, 806 F.3d at 582 (quoting *Kowalczyk v. U.S. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996)). The reasonableness of the search is not undermined by a plaintiff's "mere speculation that as yet uncovered documents may exist." *Iturralde*, 315 F.3d at 316 (internal quotation marks and alteration omitted). Summary judgment is unwarranted only "if a review of the record raises substantial doubt" about the search, "particularly in view of well defined requests and positive indications of overlooked materials." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (internal quotation marks omitted).

The State Department's declarant is the Director of its Office of Information Programs Services ("IPS"), which responds to FOIA and Privacy Act requests. Stein Decl.

5

¶ 1. He explains that upon reviewing plaintiff's request, it was determined that responsive records were likely to be found in the Office of the Legal Adviser ("OLA"), the Bureau of Western Hemisphere Affairs ("Bureau"), the U.S. Embassy in Nassau, Bahamas ("U.S. Embassy"), and the Central Foreign Policy Records ("CFPR"), and that "no other offices or records systems were reasonably likely to maintain documents on extraditions." *Id.* ¶ 15. The declarant has provided adequately detailed descriptions of each office's purpose, search methods, and search terms, and the results of the searches. *See id.* ¶¶ 17-20 (OLA locating twenty-seven responsive documents); *id.* ¶¶ 21-24 (Bureau locating no responsive documents); *id.* ¶¶ 25-31 (U.S. Embassy locating six responsive documents); *id.* ¶ 32 (CFPR, maintained in the State Archiving System, locating seven responsive documents).

Plaintiff contends that defendant (1) "failed to search and explain whether [it] possess[es] email archives for the Office of Law Enforcement and Intelligence ("L/LEI"), U.S. Embassy Nassau, Bahamas, and State Archiving System employees other than the former staff member," and (2) failed to search an email "backup system" that he only surmises might exist. Pl.'s Opp'n Decl. ¶ 14 [Dkt. # 21-1] (brackets omitted). Neither contention suffices to defeat summary judgment.

Plaintiff's first assertion is contradicted by the record. The declarant in fact avers that a search was conducted of "L/LEI's electronic and paper files," which "consist of unclassified and classified email records of the Supervisory Extradition Specialist [and] the archived email records of L/LEI employees who worked on issues in the relevant region," and further notes that the search yielded twenty-seven responsive documents. Stein Decl. ¶¶ 19-20. In addition, a search of plaintiff's name and alias in the State Archiving System,

6

which houses records "commonly referred to as the 'Central Foreign Policy Files' or 'Central File'" and is capable of querying "over 40 million records through a single interface," yielded an additional seven responsive documents. *Id.* ¶ 32.

Plaintiff's second assertion is beyond the scope of FOIA. Plaintiff does not point to anything suggesting the existence of an email backup system but instead asks "whether there are backup tapes containing staff members' emails and, if so, whether such backup tapes might contain emails no longer preserved on staff member's computers." Pl.'s Opp'n Decl. ¶ 14. Defendant's disclosure obligations, however, do not extend to answering questions. *See Adams v. FBI*, 572 F. Supp. 2d 65, 68 (D.D.C. 2008) ("Under the FOIA, an individual may obtain access to records 'written or transcribed to perpetuate knowledge or events.' . . . The FOIA neither requires an agency to answer questions disguised as a FOIA request, nor to create documents or opinions in response to an individual's request for information.") (alterations omitted) (quoting *Hudgins v. IRS*, 620 F. Supp. 19, 21 (D.D.C. 1985), *aff'd*, 808 F.2d 137 (D.C. Cir. 1987)); *see also Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 160 n.28 (D.D.C. 2013) ("Although the FOIA is a powerful and necessary statute, it was not intended to permit the public to commandeer agency employees as research assistants, including with respect to performing queries in electronic databases.").

For the foregoing reasons, the Court finds that defendant conducted adequate searches, and plaintiff has pointed to nothing in the record that raises "substantial doubt" about those searches. *Valencia-Lucena*, 180 F.3d at 326. As a result, the Court will grant summary judgment to defendant on this aspect of the FOIA claim.

**B. Claimed Exemptions**

Defendant withheld information under FOIA exemptions 1, 5, 6 and 7(C). The Court considers the propriety of each exemption in light of the justifications set out in defendant's declarations and the Criminal Division's *Vaughn* Index. *See* Brodfuehrer Decl., Ex. 2 ("*Vaughn* Index").[1]

1. Exemption 1

FOIA Exemption 1 exempts from mandatory disclosure records that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). "[C]ourts must 'recognize that the Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse affects [sic] might occur as a result of public disclosure of a particular classified record.'" *Salisbury v. United States*, 690 F.2d 966, 970 (D.C. Cir. 1982) (quoting S. Rep. No. 93-1200, at 12 (1974)). Thus, while this Court's review is de novo, Congress has indicated that courts should give "substantial weight" to agency statements concerning decisions to withhold information on the basis of Exemption 1. *Larson v. Dep't of State*, 565 F.3d 857, 864 (D.C. Cir. 2009); *see Halperin v. CIA*, 629 F.2d 144, 147-48 (D.C. Cir. 1980). Accordingly, "[i]f an agency's statements supporting exemption contain reasonable specificity of detail as to demonstrate that the withheld information logically falls within the claimed exemption and evidence in the

---

[1] *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

8

record does not suggest otherwise," the court "should not conduct a more detailed inquiry to test the agency's judgment and expertise or to evaluate whether the court agrees with the agency's opinions." *Larson*, 565 F.3d at 865.

The State Department withheld in full a three-page cable dated September 1, 2006, sent from the U.S. Embassy in Nassau, Bahamas, to the State Department "regarding conversations between" officials of the two governments "on a number of topics, including the extradition of [plaintiff]." Stein Decl. ¶ 60. The State Department's declarant personally reviewed the document and "determined that the information . . . continues to meet the classification criteria" of Executive Order 13526, 75 Fed. Reg. 707 (Dec. 29, 2009), which shields classified information "at the CONFIDENTIAL level because its unauthorized disclosure reasonably could be expected to cause damage to the national security." Stein Decl. ¶¶ 34, 38 (capitalization in original). Although the document's original classification expired on June 6, 2014, it was reclassified "as CONFIDENTIAL" on January 31, 2017, pursuant to "Sections 1.4(b) and (d) of E.O. 13526," which "pertain to foreign government information and foreign relations or foreign activities of the United States, including confidential sources." *Id.* ¶ 60.

According to the declarant, the release of the document "could reasonably be expected" generally to strain relations with foreign governments in matters of confidentiality and, more specifically, "undermine" the U.S. Government's "future extradition efforts and damage bilateral relations with the Bahamas, whose cooperation is vital to U.S. national security and anti-drug trafficking efforts in the region." *Id.* In addition, "the Department conducted a line-by-line review of [the] document and

determined there is no meaningful information that can be reasonably segregated for release." *Id.*

For similar reasons, the State Department withheld confidential portions of a three-page cable and a two-page cable it received from the U.S. Embassy in Nassau regarding plaintiff's extradition from the Bahamas to the United States, *id.* ¶ 61, and classified portions of a two-page cable it received from the U.S. Embassy that discussed the dismissal of plaintiff's *habeas corpus* motion and plaintiff's extradition to the United States in August 2006, *id.* ¶ 62. The withheld portions pertained to matters covered by E.O. 13526, "including confidential sources." *Id.*

The State Department has demonstrated that disclosure of the foregoing classified information is reasonably expected to cause damage to national security and has adequately described such damage. *See Krikorian v. Dep't of State*, 984 F.2d 461, 465 (D.C. Cir. 1993) (recognizing the State Department's judgment that release would "jeopardize 'reciprocal confidentiality' and damage national security"). Plaintiff has offered no meritorious argument to rebut the presumption of good faith accorded the declaration, and he mistakenly argues that the Criminal Division has withheld records under Exemption 1.[2] *See* Pl.'s Opp'n Decl. ¶ 17; Brodfuehrer Decl. ¶ 8 (citing exemptions 5, 6 and 7(C) as the bases of the Criminal Division's withholdings). Therefore, the State Department is entitled to summary judgment on its Exemption 1 withholdings. *See Larson*, 565 F.3d at 864-65.

---

[2] Even if the Criminal Division invoked Exemption 1 at the administrative level, it no longer relies on that exemption.

10

2. Exemption 5

FOIA Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "Exemption 5 incorporates the traditional privileges that the Government could assert in civil litigation against a private litigant," including attorney work product, the deliberative process privilege, and the government attorney-client privilege. *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 321 (D.C. Cir. 2006). The State Department withheld information described as attorney work product, deliberative process material, and attorney-client communications. *See* Stein Decl. ¶¶ 47-49. The Criminal Division withheld the referred documents in full under the attorney work product and deliberative process privileges. *See Vaughn* Index.

The deliberative process privilege protects from disclosure "government documents that are both 'predecisional' and 'deliberative.'" *Judicial Watch, Inc. v. U.S. Dep't of Def.*, 847 F.3d 735, 739 (D.C. Cir. 2017). "Documents are 'predecisional' if they are generated before the adoption of an agency policy, and 'deliberative' if they reflect the give-and-take of the consultative process." *Id.* (alteration and internal quotation marks omitted). Records that fall into that category include "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (internal quotation marks omitted). By allowing agencies to withhold such information, the deliberative process privilege "reflects the commonsense notion that agencies craft better

11

rules when their employees can spell out in writing the pitfalls as well as strengths of policy opinions, coupled with the understanding that employees would be chilled from such rigorous deliberation if they feared it might become public." *Judicial Watch, Inc.*, 847 F.3d at 739. The privilege similarly guards against "premature disclosure of proposed" decisions "before they have been finally formulated or adopted." *Public Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865, 874 (D.C. Cir. 2010) (internal quotation marks omitted).

The State Department withheld under the deliberate process privilege a "three-page draft issue paper" discussing the U.S. Government's "anti-money laundering efforts with the cooperation of the Bahamian Government." Stein Decl. ¶ 71.[3] The draft was attached to a one-page email sent by an agency attorney to other State Department officials with regard to plaintiff's drug trafficking activities. *Id.* ¶¶ 69, 71. The State Department's declarant explains that the withheld information in both the e-mail and draft issue paper "is pre-decisional and deliberative" and if disclosed "would reveal the details of the Department employees' preliminary thoughts and ideas on a foreign country's efforts to stop money laundering and could reasonably be expected to chill the open and frank expression of ideas, recommendations, and opinions that occur [during the process of] developing a preferred course of action." *Id.* ¶ 71; *see also id.* ¶ 69. The State Department has shown that the documents contained deliberative process material, which it properly withheld under FOIA Exemption 5. *See, e.g., Russell v. Dep't of Air Force*, 682 F.2d 1045,

---

[3] The State Department also redacted the names of U.S. Government employees under FOIA Exemptions 6 and 7(C). Those exemptions are addressed separately.

1047-49 (D.C. Cir. 1982) (draft manuscript properly withheld under deliberative process privilege).

The State Department, citing Exemption 5, also withheld certain attorney work product and attorney-client privileged communications in the above-mentioned email. *See* Stein Decl. ¶ 69. The State Department's declarant notes that the withheld information contains an agency attorney's "mental impressions, thought processes, and legal strategies regarding anti-money laundering efforts" that were created "in reasonable anticipation of criminal litigation," as well as "communications" between a State Department attorney and other State Department officials for the "purpose of seeking and/or providing legal advice regarding the extradition process." *Id.* Along similar lines, the State Department withheld "handwritten notes containing the mental impressions of an [agency] attorney" regarding plaintiff's "drug trafficking activities and extradition," both prepared "in reasonable anticipation of criminal litigation. *Id.* ¶ 73. As the withheld records either involve materials (1) "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney[)]" or (2) containing "confidential communications between attorneys and their clients," the State Department properly invoked Exemption 5. *Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 369 (D.C. Cir. 2005) (internal quotation marks omitted); *New York Times Co. v. U.S. Dep't of Justice*, 282 F. Supp. 3d 234, 237 (D.D.C. 2017).

The Criminal Division, for its part, withheld all eighteen of the referred records under Exemption 5. *See* Brodfuehrer Decl. ¶ 8. Although both the attorney work product and deliberative process privileges are invoked, the declarant avers, among other things,

that all of the withheld documents "were prepared by or at the direction of an attorney in anticipation of the prosecution of plaintiff by U.S. authorities," and contain "analysis" and "evaluations" of information and legal standards relevant to plaintiff's arrest, extradition and criminal charges. *Id.* ¶¶ 18-19. The Criminal Division therefore withheld all of the records under the "attorney-work product privilege because they contain information constituting the legal analysis of DOJ attorneys, the DOJ prosecutors' theory of the case being investigated and evaluation of the evidence, and the OIA attorneys' assessments of facts and issues pertaining to the requests for arrest and extradition." *Id.* ¶¶ 19, 28.

Plaintiff counters particularly as to the Criminal Division's withholdings that "the agency's description of [certain] documents" in the *Vaughn* Index "lacks . . . factual context." Pl.'s Opp'n Decl. ¶ 29. But our Circuit has made clear that "[t]he work-product doctrine simply does not distinguish between factual and deliberative material." *Judicial Watch, Inc.*, 432 F.3d at 371 (quoting *Martin v. Office of Special Counsel*, 819 F.2d 1181, 1187 (D.C. Cir. 1987)). As a result, "[i]f a document is fully protected as work product, then segregability is not required." *Id.* The State Department has properly justified withholding attorney work product documents in full under Exemption 5, as has the Criminal Division with regard to the referred documents. *See id.* at 369-70. Consequently, defendant is entitled to summary judgment on the Exemption 5 withholdings.

3. Exemptions 6 and 7(C)

"FOIA Exemptions 6 and 7(C) seek to protect the privacy of individuals identified in certain agency records." *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011). Exemption 6 protects "personnel and medical files and similar files"

14

when disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) protects "records or information compiled for law enforcement purposes" when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C). Both exemptions require the Court to balance "the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." *Light v. U.S. Dep't of Justice*, 968 F. Supp. 2d 11, 28 (D.D.C. 2013) (quoting *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007)).

The State Department and the Criminal Division invoked Exemptions 6 and 7(C) together to justify the redaction of third-party identifying information, mostly the names of U.S. Government employees or officials. *See* Stein Decl. ¶¶ 66-68, 72-75[4]; Brodfuehrer Decl. ¶¶ 22, 24. In addition, DEA invoked Exemptions 7(C) and 7(F) together to justify the redaction of the names of DEA special agents from the referred extradition memorandum. Myrick Decl. ¶¶ 8-9. Plaintiff "concedes" that the requested records were "compiled for law enforcement purposes." Pl.'s Opp'n Decl. ¶ 37; *see* Brodfuehrer Decl. ¶ 23 (discussing threshold law enforcement requirement). Therefore, the Court will address only the application of Exemption 7 to the foregoing withholdings. *See Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011) (finding "no need to consider Exemption 6 separately [where] all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)").

---

[4] Paragraph 74 is misnumbered in the declaration as paragraph 73.

15

"In deciding whether the release of particular information constitutes an 'unwarranted' invasion of privacy under Exemption 7(C)," the Court "'must balance the public interest in disclosure against the privacy interest Congress intended the Exemption to protect.'" *Am. Civil Liberties Union*, 655 F.3d at 6 (alteration omitted) (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 776 (1989)). The privacy interest at stake belongs to the individual, not the government agency, *see Reporters Comm.*, 489 U.S. at 763-65, and individuals have a "substantial interest in ensuring that their relationship to [law enforcement] investigations remains secret," *Roth*, 642 F.3d at 1174 (internal quotation marks omitted). Thus, "[a]s a result of Exemption 7(C), FOIA ordinarily does not require disclosure of law enforcement documents (or portions thereof) that contain private information." *Blackwell v. FBI*, 646 F.3d 37, 41 (D.C. Cir. 2011). "[T]he Supreme Court has made clear," moreover, "that requests for such third party information are strongly disfavored," particularly "when the requester asserts a public interest—however it might be styled—in obtaining information that relates to a criminal prosecution." *Id.* (internal quotation marks omitted).

When balancing the private interest against invasions of privacy against the public interest in disclosure, courts need only consider the public interest cognizable under FOIA, that is, the "'citizens' right to be informed about what their government is up to.'" *People for the Ethical Treatment of Animals v. Nat'l Institutes of Health*, 745 F.3d 535, 542 (D.C. Cir. 2014) (quoting *Reporters Comm.*, 489 U.S. at 773). The FOIA requester is required to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be "a significant one, more specific than having the information for its

16

own sake." *Roth*, 642 F.3d at 1175. When "the request implicates no public interest at all," the Court "need not linger over the balance; something outweighs nothing every time." *Beck v. Dep't of Justice*, 997 F.2d 1489, 1494 (D.C. Cir. 1993) (alteration omitted) (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989)).

All of the agency declarants considered the interests at stake and concluded that the individual privacy interests outweigh the public interest in disclosure. *See* Stein Decl. ¶ 59; Brodfuehrer Decl. ¶¶ 24-25; Myrick Decl. ¶ 14. The State Department's declarant, for example, explains that the release of third-party names and other identifying information "could subject the individuals to harassment or unsolicited attention and would shed no light on the operations and activities of the U.S. Government." *Id.* ¶ 66. The declarant further explains, convincingly, that the nature of the federal employees' involvement in international law enforcement efforts "may be of particular interest to non-U.S. actors who may seek to use that information to the detriment of U.S. security." *Id.*

Plaintiff counters that a public interest exists "in the disclosure of the facts supporting the requests for his extradition and the evaluation of the steps taken by the United States and the Bahamas authority to comply with the provisions of the treaty." Pl.'s Opp'n Decl. ¶ 38. He posits that "[t]here very well could be a public interest if the government has erroneously applied Exemption 6 and 7(c) to hide government misconduct." *Id.* (brackets omitted). Of course, defendant did not withhold any such facts under Exemption 7(C). In any event, the burden rests with plaintiff to establish a "sufficient reason for the disclosure" of information that implicates privacy concerns, *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004), and plaintiff's self-

17

interest in the information adds no weight to the scales, *cf. Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015).

Finally, plaintiff suggests that some of the withheld third-party information is in the public domain. Pl.'s Opp'n Decl. ¶¶ 39-41. Plaintiff, however, has not carried his burden of "pointing to the specific information in the public domain that appears to duplicate that being withheld." *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983). Accordingly, defendant is entitled to summary judgment on the Exemption 7(C) withholdings.

### 4. Record Segregability

It is well established that an agency claiming that a document is exempt under FOIA must, after excising the exempted information, release any reasonably segregable information unless the non-exempt information is inextricably intertwined with the exempt information. *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1026-27 (D.C. Cir. 1999). Defendant's declarations establish that all responsive records were reviewed with an eye toward releasing any non-exempt information and, where possible, such information was released. *See* Stein Decl. ¶¶ 59-75; Myrick Decl. ¶¶ 8-9. Moreover, the Criminal Division had no obligation to "identify segregable material or disclose any factual contents" because all of the records referred to it were appropriately determined to be attorney work product and thus fully exempt under FOIA Exemption 5. Brodfuehrer Decl. ¶ 28; *see supra* pp. 11-14. As a result, the Court concludes that defendant released all reasonably segregable responsive records. *See Trans-Pac. Policing Agreement*, 177 F.3d at 1028.

## CONCLUSION

For the foregoing reasons, the Court concludes that the State Department has satisfied its disclosure obligations under the FOIA and is entitled to judgment as a matter of law. Accordingly, the State Department's Motion for Summary Judgment is GRANTED. An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge